# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| DAVID W. OBERMEIER,             ) | |
|                 Plaintiff,       ) | |
|                        ) | CIVIL ACTION |
| v.                              ) | |
|                        ) | No. 17-2174-JWL |
| NANCY A. BERRYHILL,            ) | |
| Acting Commissioner of Social Security,  ) | |
|                 Defendant.     ) | |
| _____) | |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Acting Commissioner of Social Security (hereinafter Commissioner) denying Disability Insurance benefits (DIB)[1] under sections 216(i) and 223 of the Social Security Act. 42 U.S.C. §§ 416(i) and 423 (hereinafter the Act). Finding no error as alleged by Plaintiff in the Administrative Law Judge's (ALJ) decision, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

**I.     Background**

Plaintiff applied for DIB, alleging disability beginning March 15, 2013. (R. 20, 147). Plaintiff exhausted proceedings before the Commissioner, and now seeks judicial

---

[1]Plaintiff's Brief asserts that he also applied for Supplemental Security Income, but there is no evidence of that in the record.

review of the final decision denying benefits. He argues that the ALJ erred in discounting the medical opinion of the consultative psychologist, Dr. Schemmel, and that the mental residual functional capacity (RFC) assessed is not supported by the evidence.

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but it is less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988)). Nonetheless,

the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. § 404.1520; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment(s), and whether the severity of his impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses claimant's RFC.  20 C.F.R. § 404.1520(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the sequential process-- determining whether, in light of the RFC assessed, claimant can perform his past relevant work; and whether, when also considering the vocational factors of age, education, and work experience, claimant is able to perform other work in the economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  Blea v.

Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

The court considers the issues in the order presented in Plaintiff's Brief and finds no error in the ALJ's decision.

## II.     Dr. Schemmel's Medical Opinion

Plaintiff argues that it is unclear what actual weight was accorded Dr. Schemmel's opinion, that no record medical opinion contradicts Dr. Schemmel's medical opinion, and the ALJ's finding of inconsistencies "is confusing at best."  (Pl. Br. 11).  He argues that it "is disingenuous" for the ALJ to "attempt to disregard Dr. Schemmel's opinion [as] a one-time evaluation and [as conflicting] with the medical evidence of record" because it "is the only mental health evaluation of record," and "[c]onsequently, there is no substantial medical evidence that supports the ALJ's mental residual functional capacity findings," but the hearing testimony of the plaintiff and his sister fully support Dr. Schemmel's opinion.  Id. at 12.  Plaintiff points out that the ALJ stated at the hearing that he would attempt to obtain the records of Plaintiff's emergency room visit after his suicide attempt, but argues that "[t]here is no evidence that the ALJ attempted to obtain any additional medical records."  Id. at 13.

The Commissioner argues that the ALJ properly weighed Dr. Schemmel's opinions and explained the portions of those opinions he accepted, those he did not, and the reasons for his determination.  (Comm'r Br. 7).  She argues that Plaintiff's reliance

upon less favorable evidence is misplaced because the question is whether the ALJ's view of the evidence is supported by record evidence, not whether the evidence might also support a different view. (Comm'r Br. 8). She argues that the ALJ's securing a consultative examination to develop the record does not defeat the need to evaluate the evidence thereby obtained, nor require him to accept the opinions of the consultative examiner. Id. at 10.

In his Reply Brief, Plaintiff argues that there is no record medical evidence contrary to Dr. Schemmel's opinion, that the Commissioner points to no better or more thorough medical evidence supporting the ALJ's mental RFC, and the ALJ erroneously "relied on his own assessment and interpretation of the medical records." (Reply 1-2).

### A.     The ALJ's Evaluation of Dr. Schemmel's Medical Opinion

The ALJ recognized that the record medical evidence in this case from the relevant period is minimal, and sent Plaintiff for physical and mental consultative examinations. (R. 20, 83). The mental consultative examination was performed by Dr. Schemmel who prepared a report of that examination and later completed a "Medical Source Statement of Ability to do Work-Related Activities (Mental)." (R. 317-25). The ALJ summarized Dr. Schemmel's reports, and explained the weight he accorded them:

> On December 22, 2015, the claimant attended a psychological consultative examination with Todd Schemmel, PhD (Exhibit 12F). Dr. Schemmel noted that although the claimant reported that depression prevented him from working, the claimant was not involved in mental health treatment and had never taken any psychotropic medication (Exhibit 12F, page 1). Although the claimant reported not having money for treatment or gas to drive to and from appointments, he reported using marijuana and stimulants (Exhibit 12F, page 2). Dr. Schemmel diagnosed the claimant with major depressive disorder (Exhibit 12F, page 3).

5

\* \* \*

On December 22, 2015, after performing a psychological consultative examination, Todd Schemmel, PhD provided an opinion regarding the claimant's functioning (Exhibit 12F). Dr. Schemmel stated that the claimant had the ability to comprehend and carry out simple to intermediate instructions, but that his depression may at times interfere with this ability. Dr. Schemmel added that the claimant would likely struggle in interactions with coworkers, supervisors, and/or the public. Dr. Schemmel added that the claimant did not appear to possess the psychological stability needed for sustained gainful employment. Dr. Schemmel based this opinion on a one-time examination. The rest of the medical evidence of record, as discussed above, does not entirely support the restrictions Dr. Schemmel suggested. Thus, this opinion merits only partial weight. However, Dr. Schemmel's conclusory statement that the claimant could not sustain gainful employment merits no weight because it is an opinion reserved to the Commissioner. As explained in Social Security Ruling 96-5p, some issues are not medical issues; rather, they are administrative findings that direct the disability determination, and the responsibility for deciding such issues is reserved to the Commissioner. Whether a claimant can work, given his or her impairments, is one such reserved issue. Additionally, to assess whether a claimant is able to work under Social Security law, I must evaluate more than medical considerations; I must also evaluate vocational considerations, which are outside the scope of Dr. Schemmel's expertise.

About a week later, Dr. Schemmel provided another opinion regarding the claimant's functioning (Exhibit 13F). Dr. Schemmel suggested the claimant's ability to understand, remember, and carry out simple instructions was mildly limited but that his ability to understand, remember, and carry out complex instructions was markedly limited. Dr. Schemmel added the claimant's ability to make judgments on complex work-related decisions was markedly limited, as was his ability to interact appropriately with supervisors and coworkers. Dr. Schemmel stated the claimant's ability to respond appropriately to usual work situations and to changes in a routine work setting was markedly limited and that his ability to interact appropriately with the public was extremely limited. This opinion merits partial weight. Although the record, discussed above, shows the claimant has some mental limitations, it does not indicate restrictions to the degree Dr. Schemmel suggested. Further, this second opinion of Dr. Schemmel is inconsistent with his prior opinion in Ex. 12F, in which he opined the claimant could comprehend and carry out simple to intermediate instructions and would only "likely struggle" with social interactions.

6

(R. 27, 28).

The ALJ later explained how he arrived at the mental RFC assessed:

> the claimant's depression, anxiety, ADHD, and polysubstance abuse cause moderate difficulties with social functioning that result in limitations, including occasionally interact with supervisors and coworkers, and never interaction [sic] with the general public. Further, the claimant's severe mental impairments also cause moderate difficulties with concentration, persistence and pace that result in limitations, including performing simple, routine and repetitive tasks. Weighing all relevant factors, I find that claimant's subjective complaints do not warrant any additional limitations beyond those established in the residual functional capacity previously outlined in this decision. This residual functional capacity is based on the entire medical record and adjusted to give the claimant the benefit of the doubt with regard to his allegations of disability.

(R. 29-30).

The mental RFC assessed was that Plaintiff can perform simple, routine, and repetitive tasks; can occasionally interact with supervisors and coworkers; and can never interact with the public, as explained above. (R. 25).

### B.   Standard for Evaluating a Medical Opinion

"Medical opinions are statements from physicians and psychologists or other acceptable medical sources [2] that reflect judgments about the nature and severity of [a

---

[2] The regulations define three types of "acceptable medical sources:"

"Treating source:" An "acceptable medical source" who has provided the claimant with medical treatment or evaluation in an ongoing treatment relationship. 20 C.F.R. §§ 404.1502, 416.902.

"Nontreating source:" An "acceptable medical source" who has examined the claimant, but never had a treatment relationship. Id.                …. Continued.

7

claimant's] impairment(s) including [claimant's] symptoms, diagnosis and prognosis." 20 C.F.R. § 404.1527(a)(2).  A psychologist who has treated a patient frequently over an extended period (a treating source) is expected to have greater insight into the patient's medical condition, and his opinion is generally entitled to "particular weight." Doyal v. Barnhart, 331 F.3d 758, 762 (10th Cir. 2003).  But, "the opinion of an examining physician [(a nontreating source)] who only saw the claimant once is not entitled to the sort of deferential treatment accorded to a treating physician's opinion." Id. at 763 (citing Reid v. Chater, 71 F.3d 372, 374 (10th Cir. 1995)).  However, opinions of nontreating sources are generally given more weight than the opinions of nonexamining sources who have merely reviewed the medical record. Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004); Talbot v. Heckler, 814 F.2d 1456, 1463 (10th Cir. 1987) (citing Broadbent v. Harris, 698 F.2d 407, 412 (10th Cir. 1983), Whitney v. Schweiker, 695 F.2d 784, 789 (7th Cir. 1982), and Wier ex rel. Wier v. Heckler, 734 F.2d 955, 963 (3d Cir. 1984)).

Medical opinions may not be ignored and, unless a treating source opinion is given controlling weight, all medical opinions will be evaluated by the Commissioner in accordance with factors contained in the regulations.  20 C.F.R. § 404.1527(c); Soc. Sec. Ruling (SSR) 96-5p, West's Soc. Sec. Reporting Serv., Rulings 123-24 (Supp. 2017).  Those factors are:  (1) length of treatment relationship and frequency of examination;

---

"Nonexamining source:"  An "acceptable medical source" who has not examined the claimant, but provides a medical opinion. Id.

8

(2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.  20 C.F.R. § 404.1527(c)(2-6); see also Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001) (citing Goatcher v. Dep't of Health & Human Servs., 52 F.3d 288, 290 (10th Cir. 1995)).

After considering the factors, the ALJ must give reasons in the decision for the weight he gives the medical opinion.  Watkins v. Barnhart, 350 F.3d 1297, 1301 (10th Cir. 2003).  "Finally, if the ALJ rejects the opinion completely, he must then give 'specific, legitimate reasons' for doing so."  Id.  (citing Miller v. Chater, 99 F.3d 972, 976 (10th Cir. 1996) (quoting Frey v. Bowen, 816 F.2d 508, 513 (10th Cir. 1987)).

### C.     Analysis

Plaintiff's argument that the decision leaves unclear the actual weight the ALJ accorded Dr. Schemmel's opinion is without merit.  The ALJ specifically noted that he accorded the opinion only "partial weight."  (R. 29).  Moreover, he discounted the opinion because it was based on a one-time examination and is not supported by the rest of the evidence, and he further discounted the opinion that Plaintiff could not sustain gainful employment because it is on an issue reserved to the Commissioner.  (R. 28).  He further explained that his RFC assessment is based on an evaluation of medical factors as is Dr. Schemmel's opinion, but also includes vocational factors outside of Dr.

9

Schemmel's expertise. Id.  He went on to discount Dr. Schemmel's medical source statement because it was produced about a week after the examination report upon which it was purportedly based and because the marked and extreme limitations suggested therein are inconsistent with the mild and moderate limitations suggested in his earlier consultative examination report. Id.  The ALJ's reasoning is supported by the court's review of the record evidence.

In a footnote to his Brief, Plaintiff suggests that the ALJ's decision to discount Dr. Schemmel's opinion because it is based on a one-time examination is "disingenuous" because the ALJ accorded great weight to the opinion of Dr. Pakseresht even though it was also based on a one-time examination.  Plaintiff's argument would perhaps carry the day if the only reason given for accepting or discounting the opinions were the number of examinations.  However, the ALJ also noted that Dr. Pakseresht's opinion was "supported by and consistent with" the other record evidence and provided additional reasons as discussed above to discount Dr. Schemmel's opinion.  (R. 28).  This is not error.

Plaintiff's argument that Dr. Schemmel's "is the only mental health evaluation of record," does not require remand and apparently misunderstands the duty of the ALJ. "[T]here is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion." Chapo v. Astrue, 682 F.3d 1285, 1288 (10th Cir. 2012) (citing Howard v. Barnhart, 379 F.3d 945, 949 (10th Cir. 2004)); Wall, 561 F.3d at 1068-69).  The narrative discussion required by SSR 96-8p to be provided in an RFC assessment does not require citation to a medical opinion, or even to medical evidence in the administrative record for each RFC limitation assessed.  Castillo v.

10

Astrue, No. 10-1052, 2011 WL 13627, *11 (D. Kan. Jan. 4, 2011). "What is required is that the discussion describe how the evidence supports the RFC conclusions, and cite specific medical facts and nonmedical evidence supporting the RFC assessment." Id. See also, Thongleuth v. Astrue, No. 10-1101-JWL, 2011 WL 1303374, *13 (D. Kan. Apr. 4, 2011). There is no need in this case, or in any other, for the Commissioner to base the limitations in his RFC assessment upon specific statements in medical evidence or medical opinions in the record.

Although an ALJ is not an acceptable medical source qualified to render a medical opinion, "the ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." Howard, 379 F.3d at 949. "And the ALJ's RFC assessment is an administrative, rather than a medical determination." McDonald v. Astrue, 492 F. App'x 875, 885 (10th Cir. 2012) (citing (SSR) 96-05p, 1996 WL 374183, at *5 (July 1996)). Because RFC assessment is based on "all of the evidence in the record, not only the medical evidence, [it is] well within the province of the ALJ." Dixon v. Apfel, No. 98-5167, 1999 WL 651389, at **2 (10th Cir. Aug. 26, 1999); 20 C.F.R. § 404.1545(a). Moreover, the final responsibility for determining RFC rests with the Commissioner. 20 C.F.R. §§ 404.1527(e)(2), 404.1546. Plaintiff's assertion that the ALJ "relied on his own assessment and interpretation of the medical records" (Reply 1-2), is correct--and is the ALJ's responsibility. This is not a case where the ALJ determined that a medical source erred in his diagnoses or consideration of Plaintiff's medical impairments. Rather, he accepted Dr. Schemmel's diagnoses, and, based on the entire record evidence, including inconsistencies between Dr. Schemmel's opinions, he determined that the functional

11

limitations caused by Plaintiff's impairments are not as severe as the most extreme limitations opined by Dr. Schemmel, but are more consistent with the lesser limitations also opined by Dr. Schemmel.  (R. 28-29).

Finally, Plaintiff complains that the ALJ stated that he would attempt to obtain the records of Plaintiff's emergency room visit but that there is no evidence he attempted to do so.  As Plaintiff suggests, the ALJ stated that he would contact the emergency room of the Miami County Medical Center and the Elizabeth Layton Center "and request what records they may have about you."  (R. 53-54, 82, 83).  He stated, "Any documents we get, we will send you a copy so you can review them yourself."  (R. 54).  Plaintiff has not shown that the ALJ did not request any records from the treating facilities.  The ALJ also stated that he would send Plaintiff to a physical and psychological consultative examination, and he did so.  (R. 83, 305-25).  While there are no additional treatment records from those facilities in the administrative record, there may be many reasons for that, and it does not demonstrate that the ALJ did not request them.  As the ALJ stated, he sent Plaintiff to a physical and a psychological consultative examination.  He also sent an interrogatory to the vocational expert.  In each of these cases he proffered the resulting evidence to Plaintiff, as he said he would do if he received records from the treating facilities.  While this does not establish conclusively that the ALJ contacted the treating facilities, it does suggest that he did as he said, but the request was not productive of additional records.

Plaintiff, who was without representation at the disability hearing, secured counsel thereafter (R. 15), and it was that counsel who requested Appeals Council review of the

ALJ's decision (R. 16) and who represents Plaintiff before this court.  (Docket).  Counsel does not argue that there was probative information available from the medical facilities which would have required a different decision had it been received, and she did not secure the information at issue from the medical facilities at issue and attempt to enter it into the record either before this court or before the Appeals Council.  Yet, she did secure treatment records regarding treatment of Plaintiff's degenerative disc disease between October 17, 2011 and December 6, 2011.  (R. 326-37).  It is Plaintiff's burden to establish disability during the relevant period, and he has shown no error in the ALJ's attempt to secure the medical treatment records at issue.

The court finds no error in the ALJ's evaluation of Dr. Schemmel's opinion.

### III. Mental RFC

Plaintiff argues that the ALJ found that Plaintiff is moderately impaired in his ability to maintain adequate concentration, persistence, or pace and has moderate difficulties in social functioning, but failed to determine the functional limitations resulting from these moderate difficulties.  (Pl. Br. 14-15).  He also argues that the ALJ's limitation to simple, routine, repetitive tasks does not adequately account for Plaintiff's limitations in concentration, persistence, or pace because "the Tenth Circuit has previously held that a limitation to simple, repetitive work, or unskilled work does not account with precision [for] a limitation in concentration, persistence, or pace." Id. at 14 (citing Jaramillo v. Colvin, 576 F. App'x 870, 876 (10th Cir. 2014); and Knuutila v. Colvin, 127 F. Supp. 3d 1146, 1151 (D. Colo. 2015)).  The Commissioner responds that the moderate limitations found by the ALJ relate to the severity of a claimant's

13

limitations at step two and step three of the sequential evaluation process and do not convey specific functional limitations such as those found in an RFC assessment. (Comm'r Br. 12). She argues that the ALJ's RFC assessment is legally sufficient because it was conducted pursuant to the regulations, was consistent with its purpose, and is supported by record evidence. Id., at 13. In his reply brief, Plaintiff argues that the ALJ specifically stated in his RFC discussion that the moderate limitations in concentration, persistence, and pace, and in social functioning were accommodated in his RFC assessment. (Reply 3).

The court finds that the portion of the ALJ's decision quoted supra at 7 (R. 29-30) reveals there is no error in the ALJ's consideration of Plaintiff's moderate difficulties in social functioning and moderate difficulties in concentration, persistence, and pace. As discussed above, the ALJ accepted Dr. Schemmel's opinion that Plaintiff is able to understand, remember, and carry out simple to intermediate instructions and "would 'only likely struggle' with social interactions." (R. 28). In this context, the ALJ explained that "based upon the objective evidence, the claimant's course of treatment, his level of daily activity and his work history," the ALJ found that Plaintiff's mental impairments "cause moderate difficulties with social functioning that result in limitations, including occasionally interact with supervisors and coworkers, and never interaction [sic] with the general public." (R. 29). He went on to find that Plaintiff's "severe mental impairments also cause moderate difficulties with concentration, persistence and pace that result in limitations, including performing simple, routine and repetitive tasks." Id. He concluded, "Weighing all relevant factors, I find that claimant's subjective complaints

do not warrant any additional limitations beyond those established in the residual functional capacity previously outlined in this decision.  This residual functional capacity is based on the entire medical record and adjusted to give the claimant the benefit of the doubt with regard to his allegations of disability." (R. 29-30).

In these circumstances, the court finds that the ALJ adequately assessed and explained the specific functional limitations resulting from Plaintiff's moderate difficulties with social functioning and moderate difficulties with concentration, persistence, and pace.  Contrary to Plaintiff's argument, this is not a case where the ALJ equated a limitation to simple repetitive work or to unskilled work with moderate difficulties with concentration, persistence, or pace.  Rather, he found that Plaintiff's moderate difficulties with concentration, persistence, and pace limit him to performing simple, routine, and repetitive <u>tasks</u>, which, in context, recognizes that Plaintiff is able to understand, remember, and carry out simple to intermediate instructions.

Plaintiff has shown no error in the Commissioner's decision.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.SA.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated February 15, 2018, at Kansas City, Kansas.

s/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**